UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

NASTASSJA POSSO, et. al.,                    19-CV-1293-LJV-MJR

                    Plaintiff,               REPORT AND RECOMMENDATION

        -v-

NIAGARA UNIVERSITY,

                    Defendant.

This case has been referred to the undersigned for all pre-trial matters, including preparation of a report and recommendation on dispositive motions. (Dkt. No. 15). Before the Court is defendant's partial motion to dismiss plaintiffs' amended complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. For the following reasons, it is recommended that defendant's motion to dismiss (Dkt. No. 14) be granted in part and denied in part.

## PROCEDURAL HISTORY

On September 20, 2019, Nastassja Posso, Jaime Rolf, and Jane Doe-1 (collectively "plaintiffs") commenced this action against Niagara University ("defendant" or "Niagara") for discrimination on the basis of sex and gender. (Dkt. No. 1). On October 17, 2019, an amended complaint was filed which added Jane Doe-2 as an additional plaintiff. (Dkt. No. 13). Plaintiffs' amended complaint asserts causes of action for (1) unequal treatment under Title IX of the Education Amendments of 1972 brought by Posso, Rolf, and Jane Doe-1; (2) gender-based harassment under Title IX brought by Posso, Rolf, and Jane Doe-1; (3) negligent administration of a Title IX program brought

by all plaintiffs; (4) common law negligence brought by all plaintiffs; and (5) breach of contract brought by Posso and Rolf. (Dkt. No. 13). Plaintiffs seek injunctive/declaratory relief, damages, and attorney fees and expenses. (*Id.*).

On December 6, 2019, defendant brought the instant motion seeking dismissal of Jane Doe-2's Title IX claim (second cause of action), plaintiffs' negligent administration of Title IX program and common law negligence claims (third and fourth causes of action, respectively), and Posso and Rolf's breach of contract claim (fifth cause of action). (Dkt. No. 14). Defendant also moved for an order directing plaintiffs to provide defense counsel with the names and identities of plaintiffs Jane Doe-1 and Jane Doe-2.[1] (*Id.*). After a lengthy extension of the briefing schedule as the parties tried to resolve the case, plaintiff filed a memorandum in opposition to defendant's motion on July 29, 2020. (Dkt. No. 19). Plaintiffs now consent to dismissal of the third and fourth causes of action as to all plaintiffs and the fifth cause of action as it relates to plaintiff Posso only. (*Id.* at pg. 2). Defendant filed a reply memorandum addressing the remaining claims on August 12, 2020. (Dkt. No. 20). In its reply, defendant made an additional request that the Court strike from plaintiffs' response all references to information obtained during mediation on the grounds that those statements are a breach of confidentiality according to Rule 5.7(B) of the Court's Alternative Dispute Resolution Plan.[2] (*Id.* at pgs. 9-10).

On August 19, 2020, the Court heard oral argument on the motion to dismiss and requested supplemental briefing from plaintiffs. Plaintiffs submitted a supplemental brief

---

[1] Defendant's request for disclosure of the Jane Doe identities was made moot after plaintiffs agreed to disclose that information to defense counsel during the mediation process. (Dkt. No. 19, pg. 3).
[2] Defendant's request to strike this language from plaintiffs' response is granted.

on August 26, 2020 (Dkt. No. 22), and defendant submitted a response on September 4, 2020 (Dkt. No. 23). At that time, the Court considered the matter submitted for decision.

## RELEVANT FACTS and BACKGROUND [3]

### *Plaintiffs' Allegations*

Plaintiffs are female students, or former students, of Niagara University, a domestic corporation located in Lewiston, New York. (Dkt. No. 13, ¶¶ 1, 20-25). Plaintiffs allege that Niagara University receives federal financial assistance and associated benefits and is therefore subject to the requirements of Title IX in all its programs, including intercollegiate athletics. (*Id*. at 25). Plaintiffs Posso, Rolf, and Doe-1 were, at relevant times, current students and members of Niagara's swimming and diving athletic teams. (*Id*. at 1, 20-24). Plaintiff Doe-2 was, at relevant times, a student at Niagara but not a member of swimming or diving team. (*Id*. at 23).

Plaintiffs allege that Niagara was deliberately indifferent to a pattern of sexual harassment and sexual violence perpetrated against plaintiffs and other female students since at least 2016. (*Id*. at 2). They allege that the manner in which Niagara operated its athletic department, specifically its swimming and diving program, marginalized women and resulted in a hostile environment. (*Id*.). They further allege that this environment continued to exist in part because of Niagara's failure to have systems in place to

---

[3] The facts described herein are taken from the pleadings and motion papers filed in this lawsuit. The Court notes that defendant submitted several declarations and exhibits as part of its motion to dismiss which include factual allegations outside the pleadings. (Dkt. Nos. 14-1, 14-2). Those documents were not relevant to the remaining issues raised in the motion and were not relied on by the Court in reaching its recommendation. Plaintiffs have also submitted additional factual allegations within their supplemental responding papers. (Dkt. No. 22). The Court will not consider such extrinsic evidence as it has not been properly pleaded. *See Friedl v. City of New York*, 210 F.3d 79, 83 (2d Cir. 2000) (a district court errs when it considers affidavits and exhibits submitted by defendants or relies on factual allegations contained in legal briefs or memoranda in ruling on a 12(b)(6) motion to dismiss).

eliminate discrimination against women or to assure that reported incidents of sexual discrimination, harassment, and assault were promptly and effectively remedied. (*Id.*).

Plaintiffs allege that in 2017, prior to this case being brought, Niagara entered into a Voluntary Resolution Agreement with the United States Department of Education's Office for Civil Rights to resolve a prior complaint of sexual harassment of a student by a professor and to address certain aspects of the University's Title IX compliance. (*Id.* at 3). Under the agreement, Niagara allegedly agreed to provide training to staff members responsible for reporting incidents of sexual harassment. (*Id.* at 58). Plaintiffs allege that, despite this, Niagara failed to have programs, policies, procedures, or systems in place to properly administer Title IX requirements, including training for student-athletes and staff and giving proper notice to students about options for making Title IX complaints and receiving related services. (*Id.* at 38-44, 56).

As their first cause of action under Title IX, plaintiffs Posso, Rolf, and Doe-1 allege that they received unequal treatment as female members of Niagara's swimming and diving teams.[4] They allege that Niagara failed to provide separate women's teams and instead created a co-ed team structure which fostered a male-dominated, discriminatory, and hostile environment for female athletes. (*Id.* at 66-72). They allege unequal treatment of women swim team members also occurred in the allocation of equipment and supplies, the opportunity to receive coaching, and the hiring and compensation of coaches. (*Id.*).

As their second cause of action under Title IX, plaintiffs Posso, Rolf, and Doe-1 allege that they were subjected to harassment on the basis of their sex and gender that

---

[4] The Court has not included all of the facts and allegations raised in plaintiff's first cause of action because they are not at issue in this motion. Additionally, plaintiffs' third cause of action for negligent administration of Title IX program and fourth cause of action for common law negligence are excluded entirely from this analysis based on plaintiffs' consent to dismissal of those claims.

was sufficiently severe and pervasive to create an abusive educational environment and that a cognizable basis for institutional liability exists. (*Id*. at 73-86). Plaintiffs allege that the swim team coach, Ben Nigro, was a school official who had actual knowledge of the harassment and failed to act, or displayed deliberate indifference, to the sexual harassment. (*Id*. at 75).

The amended complaint details multiple complaints that were allegedly made by athletes to Niagara University officials regarding harassment of female swimmers. (*Id*. at 76-80). Plaintiffs allege that staff failed to file reports about these incidents of sexual harassment and failed to take prompt and effective steps to end the harassment, prevent its recurrence, and remedy its effects. (*Id*. at 56-58). Plaintiffs Posso, Rolf, and Doe-1 allege that they made complaints to Coach Nigro about offensive conduct occurring in his presence at practices and on other occasions. (*Id*. at 8). Coach Nigro allegedly failed to take appropriate remedial action. (*Id*.). Plaintiff Doe-1 alleges that, by 2016, she had also complained to former diving coach Brooke Nigro, the spouse of Ben Nigro, about offensive conduct by members of the men's swim team. (*Id*. at 9). In Spring 2016, Doe-1 was dissatisfied with the corrective response taken by the coaches and made a complaint to Assistant Athletic Director Susan Roarke about the mistreatment of women swimmers by male swimmers and Coach Nigro's operation of the teams in a way that permitted continued sexual harassment and bullying. (*Id*. at 10, 76). Doe-1 alleges that Director Roarke failed to offer any assistance or take remedial action. (*Id*. at 10). Doe-1 then met with Athletic Director Simon Gray about the offensive conduct and he allegedly failed to address her complaints or take remedial action. (*Id*. at 11). In December 2018, plaintiff Posso met with Niagara's Title IX Coordinator, Ryan Thompson, and filed a formal

complaint. (*Id.* at 12). Posso states this complaint was still pending without resolution as of nine months later. (*Id.*). Plaintiffs also allege that, at some point prior to February 2019, another female swimmer met with Dean of Students Jason A. Jakubowski about harassment and bullying by male swimmers. (*Id.* at 17). Plaintiffs believe that Dean Jakubowski failed to take any remedial action in response to that complaint and the female swimmer left Niagara after her freshmen year. (*Id.*).

Plaintiffs allege that much of the offensive conduct occurred by and in the presence of Coach Ben Nigro. During the 2015-2016 and 2017-2018 years a male swimmer allegedly complained that Coach Nigro brought up the topics of "mothers, sexuality and sexual intercourse" and made related inappropriate comments. (*Id.* at 77). On another occasion, Coach Nigro allegedly heard that a male swimmer had sex with a female recruit and stated, "He must not have been very good since she [the recruit] is not coming to [Niagara University]." (*Id.* at 76).

In addition to making sexual comments himself, plaintiffs allege that Coach Nigro failed to prevent male swimmers from making offensive and inappropriate comments. (*Id.* at 78). Such comments by male swimmers included repeated use of the words "cunt," "pussy," and "slut" to describe female swimmers, moaning to emulate sexual gratification, and making sexual innuendos such as "finish harder," "get it up, get it in," and "let's get wet." (*Id.* at 78-80). Male swimmers also "body-shamed" female swimmers by making whale noises, calling a female swimmer "water buffalo," making weight-based comments, calling female swimmers "fat" or other derogatory names, and by ranking female swimmers by physical appearance. (*Id.* at 78). Doe-1 alleges that male swimmers referred to her as "Princess thigh gap" in reference to her slender body while on the pool deck with

- 6 -

the Coach present. (*Id.* at 81). It is alleged these comments were made repeatedly over a period of weeks, months, and years, having a pernicious effect and going well-beyond what would be thought of as good-natured teasing by a reasonable person. (*Id.* at 80.) Plaintiffs allege that sexual innuendos and offensive comments are "engrained in the overall environment of the swimming team." (*Id.*).

Plaintiffs state that although the harassment was primarily verbal, some physical harassment occurred as well. (*Id.* at 81). It is alleged that on one occasion a male swimmer intentionally pushed Doe-1 into a bush resulting in a cut to her leg. (*Id.*). Plaintiffs also allege, upon information and belief, that other incidents of physical violence against women occurred since 2016, including a male swimmer holding a female swimmer's head under water until she struggled to breathe, and a male swimmer biting a female swimmer, causing bruising to her arm. (*Id.* at 82).

Plaintiffs allege that Coach Nigro's failure to discipline or sanction male swimmers encouraged an environment in which they were permitted to bully, intimidate, and humiliate female swimmers. (*Id.* at 83). In response to their complaints, Coach Nigro allegedly told female swimmers to adjust their own behavior. (*Id.* at 84-85). He allegedly made statements to the effect of "be a duck" (meaning that they should let comments roll off of them like water rolls off a duck's back), that "90% is how you react and 10% is what they do," that the male swimmer's misbehavior is simply due to immaturity, and that "boys will be boys." (*Id.*).

Within the second cause of action, plaintiff Doe-2, a female student who was not a member of Niagara's swim team, alleges that she was sexually assaulted by a male member of the swim team during the Fall 2018 semester. (*Id.* at 13, 82). In January 2019,

Doe-2 alleges that she received a threatening phone message from a man she believed to be the same individual who assaulted her. (*Id.* at 14). Doe-2 then made a report of the phone call to a Campus Security Officer who referred her to the Title IX Coordinator. (*Id.*). In February 2019, Doe-2 met with the Title IX Coordinator, reporting to him both the sexual assault and the threatening phone call. (*Id.* at 15). She alleges that the Coordinator discouraged her from filing a formal complaint and instead convinced her that a "mutual No-Contact Order" was a better option. (*Id.* at 16). An order was issued by Dean of Students Jason A. Jakubowski directing that Doe-2 and the alleged assailant were to have no contact with each other. (*Id.*). Doe-2 alleges that no other disciplinary action was taken against the male student. (*Id.*). She alleges that he is still a student at Niagara and remains on the men's swim team. (*Id.*). Since she reported the assault and telephone call, Doe-2 alleges that the male student has, along with others, continued a pattern of attempting to intimidate Doe-2 by being present near her while she is on campus. (*Id.* at 23). As a result, she has experienced fear and anxiety and has sought treatment for post-traumatic stress disorder, anxiety, and depression caused by the sexual harassment and abuse. (*Id.*). Doe-2 alleges that Niagara controlled the environment in which prior acts of sexual harassment and physical violence against women occurred and failed to effectively prevent a recurrence of similar incidents. (*Id.* at 82).

As its fifth cause of action, plaintiff Rolf alleges that defendant breached express or implied agreements to provide her with a scholarship to attend Niagara University.[5] (*Id.* at 101-104). Rolf alleges that during her first two years at Niagara, 2016-17 and 2017-18, she was subjected to sexual harassment and abuse by male swim team members, as

---

[5] As explained above, the Court will not include facts or allegations relative to plaintiff Posso's claim for breach of contract based on plaintiffs' consent to dismissal of that claim.

well as retaliation when she complained about that abuse. (*Id.* at 21). In February 2018, she allegedly forfeited her swimming scholarship to escape the harassment and chose instead to attend a one-semester externship with Disney College in Orlando, Florida. (*Id.*).

## DISCUSSION

The remaining issues before the Court in this motion relate to plaintiff Jane Doe-2's Title IX claim (second cause of action) and plaintiff Rolf's claim for breach of contract (fifth cause of action). Defendant moves to dismiss both causes of action for failure to state a claim pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. No. 14-3, pgs. 11-15; 17-18).

### I.    Rule 12(b)(6) Pleading Standard

A defendant may move to dismiss a complaint on the ground that the complaint fails to state a claim on which relief can be granted. *See* Fed. R. Civ. P. 12(b)(6). In order to state a claim on which relief can be granted, a complaint must contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." *See* Fed. R. Civ. P. 8(a)(2). In reviewing a complaint in the context of a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept as true all factual allegations and draw all reasonable inferences from those allegations in favor of the plaintiff. *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007). Specifically, a complaint must plead "enough facts to state a claim to relief that is plausible on its face," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007), and must "allow[]the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The

Supreme Court has further instructed that "[d]etermining whether a complaint states a plausible claim for relief...requires the...court to draw on its judicial experience and common sense...[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not shown–that the pleader is entitled to relief." *Bell Atl. Corp.*, 550 U.S. at 679.

## II.    Jane Doe-2's Title IX Claim for Gender-Based Harassment

Plaintiff Jane Doe-2 alleges that defendant is liable under Title IX because it had actual notice of, and was deliberately indifferent to, discrimination both before and after she was sexually assaulted by another student, a male member of the swim team. Defendant moves to dismiss Doe-2's pre-assault claim on the grounds that she has failed to allege that it acted with deliberate indifference in responding to prior harassment that led to her subsequent sexual assault because (1) defendant did not have notice of risk to students outside the swim program, and (2) defendant did not have notice of any prior sexual assaults. (Dkt. No. 14-3, pgs. 11-15). Defendant moves to dismiss Doe-2's post-assault claim on the grounds that she fails to plead facts adequate to support plausible deliberate indifference on its part. (*Id.*).

Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681, et seq., and the regulations adopted pursuant thereto, 34 C.F.R. part 106, (collectively "Title IX") prohibit sex-based discrimination in educational settings. The statute provides that "[n]o person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance [...]." 20 U.S.C. § 1681(a).

Sexual harassment is a form of discrimination for Title IX purposes and student-on-student sexual harassment, if sufficiently severe, can rise to the level of discrimination actionable under the statute. *See Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 649-50 (1999). To succeed in this claim, plaintiffs must show that defendant had actual notice of the complained of discrimination and its response amounted to deliberate indifference to the discrimination. *See Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998) ("[A] damages remedy will not lie under Title IX unless an official [...] has actual knowledge of discrimination in the recipient's programs and fails to adequately respond.")

To survive a motion to dismiss, a plaintiff bringing a student-on-student sexual harassment Title IX claim must allege that: (1) a federally funded educational institution (2) was deliberately indifferent to and (3) had actual knowledge of (4) sexual harassment that was so severe, pervasive, and objectively offensive that it could be said to have deprived the plaintiff of access to the educational opportunities or benefits. *Roskin-Frazee v. Columbia Univ.*, 17-CIV-2032-GBD, 2018 U.S. Dist. LEXIS 28937, *11 (S.D.N.Y. Feb. 21, 2018) (citing *Davis*, 526 U.S. at 650). Deliberate indifference can be found when the defendant's response to known discrimination "is clearly unreasonable in light of the known circumstances." *Gant v. Wallingford Bd. of Educ.*, 195 F.3d 134, 141 (2d Cir. 1999) (quoting *Davis*, 526 U.S. at 648). "This is a fairly high standard – a 'negligent, lazy, or careless' response will not suffice." *Karasek v. Regents of the Univ. of Cal.*, 948 F.3d 1150, 1162 (9th Cir. 2020), *modified by* 956 F.3d 1093 (citation omitted). Instead, the plaintiff must demonstrate that the school's actions amounted to "an official decision...not to remedy" the discrimination. *Id.* (citation omitted). The Supreme Court was clear in *Davis*

that although institutions may be liable for their deliberate indifference to known acts of peer sexual harassment, that "does not mean that recipients can avoid liability only by purging their schools of actionable peer harassment or that administrators must engage in particular disciplinary action." 526 U.S. at 648.

    a.  <u>Deliberate Indifference Prior to the Assault</u>

    Defendant makes two main points in support of dismissing Doe-2's pre-assault claim. First, defendant submits that Doe-2's claim must fail because she has not sufficiently alleged that defendant possessed actual knowledge of a heightened risk of sexual assault to Doe-2 as a student who was not a member of the swim program. Second, defendant disputes that it had prior notice of a substantial risk of sexual assault based on lack of evidence of previous similar incidents of sexual assault, let alone an assault by the individual at issue. The Court finds that Doe-2 has plead a plausible pre-assault claim.

    The Tenth Circuit has concluded that Title IX liability exists "when the violation is caused by official policy, which may be a policy of deliberate indifference to providing adequate training or guidance that is obviously necessary for implementation of a specific program or policy of the recipient." *Simpson v. Univ. of Colo. Boulder*, 500 F.3d 1170, 1178 (10th Cir. 2007). It further explained that implementation of an official policy can certainly be a circumstance in which the recipient exercises significant "control over the harasser and the environment in which the harassment occurs." *Id.* (quoting *Davis*, 526 U.S. at 644). In *Simpson*, plaintiffs were sexually harassed and assaulted by student athletes while involved in a school-sanctioned football recruiting program which paired male recruits with female "ambassadors" to show the recruits "a good time." *See* 500 F.3d

at 1173-74, 1184-95. The Court found that the university was aware of prior complaints of sexual misconduct committed by the recruits and players and knew of the need to better supervise the program and implement sexual assault prevention training. *Id.* Indeed, the football coach "had general knowledge of a significantly heightened risk of sexual harassment and assault during college-football recruiting efforts," "knew that such assaults had indeed occurred during [university] recruiting visits," and "nevertheless maintained an unsupervised player-host program." *Id.* Based on this, the Court accepted that a jury could infer that the need for training and guidance of players was so obvious, and the inadequacy was so likely to result in Title IX violations, that the coach could reasonably be said to have been deliberately indifferent to the need. *Id.* Similarly, in *Tubbs v. Stony Brook University*, a District Court refused to dismiss a pre-assault Title IX claim where it was alleged that the university had knowledge of an increased number of sexual assaults on campus and had previously been warned by the Office for Civil Rights about deficiencies in its polices and responses to sexual assaults. *See* 15-CIV-0517-NSR, 2016 U.S. Dist. LEXIS 28465, *29 (S.D.N.Y. Mar. 4, 2016). That Court found that the university's failure to remedy those policies could be clearly unreasonable in light of the circumstances. *Id.*

In the recent case of *Karasek v. Regents of the University of California*, the Ninth Circuit stated that a cognizable pre-assault claim may even be found to extend campus-wide, beyond a particular group or program. *See* 948 F.3d at 1170. There, the Ninth Circuit recognized that it is easier to establish a causal link between a school's policy of deliberate indifference and the plaintiff's harassment when the heightened risk of harassment exists within a specific program, such as in *Simpson. Id.* Despite this, the

Ninth Circuit held that it "will not foreclose the possibility that a plaintiff could adequately allege causation even when a school's policy of deliberate indifference extends to sexual misconduct occurring across campus." *Id.* While remanding to the District Court to decide if such a causal link was adequately pleaded in that case, the Ninth Circuit clarified that "a pre-assault claim should survive a motion to dismiss if the plaintiff plausibly alleges that (1) a school maintained a policy of deliberate indifference to reports of sexual misconduct, (2) which created a heightened risk of sexual harassment (3) in a context subject to the school's control, and (4) the plaintiff was harassed as a result." *Id.* at 1169.[6]

Defendant argues that Plaintiffs do not sufficiently allege that Niagara had notice of a heightened risk of sexual assault in the specific context alleged by Doe-2. *See Roskin Frazee v. Columbia Univ.,* 2018 U.S. Dist. LEXIS 28937 at *13-16; *see also Tubbs,* 2016 U.S. Dist. LEXIS 28465 at *26 (collecting cases) ("Generally, cases that hold a school responsible for pre-assault deliberate indifference involve actual knowledge of sexual assault(s) committed in a particular context or program or by a particular perpetrator or perpetrators."). Defendant also contends that there must be consistency between a specific victim and specific perpetrator(s) to show actionable harassment.[7]

---

[6] The Second Circuit has not yet addressed the precise boundaries of the "actual notice requirement" in this context or examined a pre-assault Title IX claim. *See Roskin-Frazee,* 2018 U.S. Dist. LEXIS 28937 at n.2; *Tubbs,* 2016 U.S. Dist. LEXIS 28465 at *26-27.

[7] Defendant supports this argument with *Kollaritsch v. Mich. State University Board of Trustees,* in which the Sixth Circuit stated that a plaintiff cannot premise their claim of "further harassment" on conduct by the perpetrator directed at third parties. *See* 944 F.3d 613, 622 (6th Cir. 2019). Defendant's reliance on this is misplaced. The Court understands the reasoning in *Kollaritsch* to apply to a post-assault analysis of further harassment of a specific plaintiff, as discussed below. To clarify this, the Court refers again to *Simpson,* wherein plaintiffs' pre-assault claims were recognized based on the university's knowledge of prior sexual assaults and misconduct by various members of the football team against victims other than the plaintiffs. *See* 500 F.3d 1170.

The Court rejects defendant's argument. Instead, the Court finds *Simpson* and *Karasek* persuasive for the premise that a university can certainly be liable under Title IX for a policy of deliberate indifference to a heightened risk of sexual harassment known to exist within a particular group or context, and possibly beyond that. The Court acknowledges the serious concern of permitting pre-assault liability without context-specific notice. However, Doe-2 has done more than make a general allegation of sexual misconduct on campus or object to inadequacies in the university's reporting and response policies. Doe-2 has alleged that her assailant was a part of a "particular group that had a known history of sexual harassment, akin to the situation in *Simpson*." *See Tubbs v. Stony Brook Univ.*, 343 F. Supp. 3d 292, 320 (S.D.N.Y. 2018).[8]

Here, plaintiffs have plausibly alleged that severe, pervasive, and objectively offensive sexual harassment existed within Niagara's swimming and diving program. Namely, they allege a lengthy history of male swimmers bullying, intimidating, and humiliating female swimmers by repeatedly using sexual innuendos, making degrading comments based on sex or gender, and engaging in acts of physical violence against women. Plaintiffs also allege that the head coach made sexually inappropriate remarks and encouraged a culture of offensive conduct against female swimmers. Plaintiffs further allege that two coaches, the athletics department director and assistant director, the Dean of Students, and the Title IX Coordinator were each made aware of individual instances of misconduct, or a pattern of behavior, at various times.[9] Plaintiffs allege that no remedial

---

[8] The Court in *Tubbs* subsequently granted summary judgment in favor of defendant based on plaintiff's failure to produce evidence supporting such an allegation. *See* 343 F. Supp. 3d 292.

[9] It is plausibly alleged that the harassment was reported to an "appropriate person" as required by the statute. *See* 20 U.S.C. § 1682; *Gebser*, 524 U.S. at 290 ("An 'appropriate person' under § 1682 is, at a minimum, an official of the recipient entity with authority to take correction action to end the discrimination.")

action was taken to prevent further harm, such as providing additional training, guidance, or supervision. Based on these facts, a reasonable jury could conclude that Niagara's response to these incidents was "clearly unreasonable in light of the known circumstances." *Gant*, 195 F.3d at 141. Thus, plaintiffs have adequately pleaded that defendant had "actual knowledge of a heightened risk that is specific enough to allow it to remedy" its policy of deliberate indifference to sexual harassment perpetrated by male swimmers. *See Tubbs*, 2016 U.S. Dist. LEXIS 28465 at *26.

If Doe-2 had also been a swimmer, it is clear that her sexual assault would fall squarely within the "particular context or program" theory applied by *Tubbs* and *Roskin-Frazee*. Because she was not a swim team member, defendant asks the Court to distinguish the conduct against Doe-2 from the harassment of female swimmers. However, the fact that her alleged assailant was a male member of the swim team is enough to conclude that Doe-2 has plausibly alleged a causal link between the school's policy of indifference and the heightened risk to Doe-2. *See Karasek*, 948 F.3d at 1170. Although the university was only informed of past misconduct by male swimmers against female swimmers, the crucial knowledge was not the specific class of potential victims, but that members of a particular group, male members of the swim team, were engaging in sex-based harassment and misconduct against female students. *See Zamora v. N. Salem Cent. Sch. Dist.*, 414 F. Supp. 2d 418, 425 (S.D.N.Y. 2006) (holding that a school's knowledge of a teacher's propensity to sexually harass other children may constitute actual knowledge for a subsequent victim's Title IX claim). There is no need to require that a student victim of sexual assault be a member of a known class when the school has actual knowledge of persistent sexual harassment among a distinct group to which

the alleged perpetrator is a member. It seems arbitrary that the "actual notice" line must somehow stop with female swimmers being the only students at substantial risk from this misconduct. In short, Doe-2 has plausibly alleged that Niagara controlled the environment in which prior acts of sexual harassment and physical violence against women occurred and failed to effectively prevent a recurrence of similar incidents, resulting in her assault by a swim team member.

On defendant's second argument, with regard to the type of misconduct of which Niagara had notice, the Court finds that Niagara could reasonably foresee, from the known sexual misconduct, that harassment by male swimmers might escalate to the level of sexual violence. Defendant submits that the complaint is deficient because it lacks allegations that it knew of prior instances of sexual assault, as opposed to verbal and physical harassment. *See K.T. v. Culver-Stockton Coll.*, 865 F.3d 1054, 1058 (8th Cir. 2017) (requiring that a plaintiff must allege that the funding recipient had prior notice of a substantial risk of peer harassment in the recipient's programs based on evidence such as previous *similar* incidents of assault) (emphasis added); *see also Carabello v. New York City Dep't of Educ.*, 928 F. Supp. 2d 627, 639 (E.D.N.Y. 2013) (collecting cases in which past behavior was found not sufficiently similar to the conduct at issue in the litigation to have put the school on notice).

The Court does not agree that a prior instance of sexual assault is *per se* necessary to find that the school had notice of a heightened risk. Doe-2 has plausibly alleged that the harassing conduct reported to school officials before her assault was sufficiently similar to the subsequent sexual violence against her. Lesser harassment may provide actual notice of sexually violent conduct, for it is the risk of such conduct that the

Title IX recipient has the duty to deter. *Doe v. Sch. Bd.*, 604 F.3d 1248, 1258-59 (11th Cir. 2010); *see also Williams v. Bd. of Regents*, 477 F.3d 1282, 1290-94 (11th Cir. 2007). As in *Doe* and *Williams*, plaintiffs' complaint alleges that the university had actual notice of a history of lesser sexual harassment of other victims prior to the sexual assault at issue.

Indeed, all of the alleged misconduct falls in the category of sexual harassment prohibited by Title IX. On this point, defendant argues that plaintiffs have conflated physical assault and sexual assault in making a link between past instances of physical violence by male swimmers and the sexual assault of Doe-2. As of August 14, 2020, the Department of Education defined "sexual harassment" to mean conduct on the basis of sex that satisfies one or more of the following:

> (1) [a]n employee of the recipient conditioning the provision of an aid, benefit, or service of the recipient on an individual's participation in unwanted sexual conduct; (2) [u]nwelcome conduct determined by a reasonable person to be so severe, pervasive, and objectively offensive that it effectively denies a person equal access to the recipient's education program or activity; or (3) 'sexual assault' as defined by 20 U.S.C. 1092(f)(6)(A)(v) [Clery Act], 'dating violence' as defined in 34 U.S.C. 12291(a)(10), 'domestic violence' as defined by 34 U.S.C. 12291(a)(8), or 'stalking' as defined by 34 U.S.C. 12291(a)(30) [Violence Against Women Act].

*See* 34 C.F.R. § 106.30. The Department's Final Rule, which provided this updated definition, explained that the new regulations continue the approach of former agency guidance[10] in stating that "sexual harassment" includes unwelcome sexual advances, requests for sexual favors and other verbal, nonverbal, or physical conduct of a sexual

---

[10] *Revised Harassment Guidance: Harassment of Students by School Employees, Other Students, or Third Parties*, Title IX (Jan. 19, 2001), https://www2.ed.gov/about/offices/list/ocr/docs/shguide.html#_end6, *rescinded*.

nature. *See Nondiscrimination of the Basis of Sex in Education Programs or Activities Receiving Federal Assistance*, 85 Fed. Reg. 30,026, *30,036 (May 19, 2020). The Department's opinion is clear that "sexual violence is a type of sexual harassment." *Id.* It further clarifies that this definition "includes unwelcome conduct of a sexual nature, **or other unwelcome conduct on the basis of sex**, consistent with Department guidance." *Id.*[11] (emphasis added). Thus, non-sexual, but unwelcome, physical conduct directed at an individual because of their sex is within the definition of sexual harassment.

The misconduct alleged here includes a pattern of harassment of a sexual nature as well as harassment directed at female students because of their sex or gender. Plaintiffs allege verbal harassment against female swimmers in the form of derogatory and offensive comments related to the subject being female. They have also pointed to physical conduct by male swimmers against female swimmers, including biting, pushing, and holding underwater. Although the alleged physical violence is arguably not overtly sexual in nature, it is alleged to be offensive and unwelcome touching based on the victim's sex or gender.

Thus, the complaint sets forth both verbal harassment and offensive touching that can be viewed as sexual harassment of a similar and related manner as Doe-2's sexual assault. Enough facts have been alleged regarding sexual harassment by male swim team members for a reasonable jury to find that the known conduct was severe and

---

[11] Other past guidance from the Department noted that Title IX prohibits "gender-based harassment, which may include acts of verbal, non-verbal, or physical aggression, intimidation, or hostility based on sex or sex-stereotyping, even if those acts do not involve conduct of a sexual nature." *See* U.S. Dep't. of Education, Office for Civil Rights, *Dear Colleague Letter: Sexual Violence, Russlynn Ali* (Apr. 4, 2011), https://www2.ed.gov/about/offices/list/ocr/letters/colleague-201104.pdf, *withdrawn by* Dear Colleague Letter (Sept. 22, 2017), https://www.2ed.gov/about/offices/list/ocr/letters/colleague-title-ix-201709.pdf. Although this guidance is no longer in effect, the Court finds it helpful merely as a reference.

pervasive enough to give Niagara notice that the harassment was likely and foreseeable to escalate into sexual violence. The Court is satisfied, at this stage, that plaintiffs have sufficiently alleged that defendant had actual notice of harassment substantially similar to the conduct at issue here.

As stated above, when considering a Rule 12(b)(6) motion to dismiss, the Court is asked to draw on common sense and judicial experience in reviewing the sufficiency of a pleading. The Court understands that there is a high hurdle for plaintiffs to prove the university's liability for this conduct under Title IX. However, for the reasons stated above, and viewing the factual allegations in the light most favorable to plaintiffs, the Court finds that the amended complaint states a plausible pre-assault claim of deliberate indifference adequate for the pleading stage. Thus, this portion of Doe-2's claim should survive at least through the discovery phase.

b. <u>Deliberate Indifference After the Assault</u>

Defendant argues that Doe-2's claim of post-assault deliberate indifference should be dismissed because Doe-2 does not allege post-reporting conduct that is severe, pervasive and objectively offensive. The Court finds that Jane Doe-2 has failed to plead a post-assault claim of deliberate indifference on the part of Niagara.

The facts alleged indicate that Doe-2 made reports to university officials in January and February 2019 that she had been sexually assaulted. She also received a harassing telephone call from a man she believed to be the individual who assaulted her. Doe-2 states that she reported both the assault and the telephone call to the university simultaneously. Doe-2 further alleges that her assailant subsequently "continued a pattern of attempting to intimidate [her] by being present near her while she is on campus."

The complaint contains no other allegations describing the specific conduct, context, frequency, or timing of events.

In *Kollaritsch v. Michigan State University Board of Trustees*, the plaintiff made a Title IX claim for post-assault deliberate indifference on the part of the university following her sexual assault by a male student. 944 F.3d 613 (6th Cir. 2019). After Kollaritsch's report of the assault, the university completed an investigation and disciplined the perpetrator by placing him on probation and forbidding contact with Kollaritsch. *Id.* at 624. Kollaritsch then encountered her assailant at least nine times, characterizing the encounters as "stalking, harassing, and intimidating." *Id.* She reported the encounters to an administrator, but the school determined that the encounters were incidental with no retaliation occurring. *Id.* In her complaint, Kollaritsch did not provide any description of the encounters that would qualify them as "sexual, severe, pervasive, or objectively offensive." *Id.* The Court decided as a matter of law that the facts alleged did not plead actionable *further* sexual harassment, which it held is necessary to state a viable claim of deliberate indifference. *Id.* at 623-25.

Contrary to the Sixth Circuit, the Tenth Circuit has held that a Title IX plaintiff is not required to allege that she suffered actual additional incidents of sexual harassment, just that the school's indifference to the reports made them "liable or vulnerable" to further harassment. *See Farmer v. Kan. State Univ.*, 918 F.3d 1094, 1103-04 (10th Cir. 2019) (quoting *Davis*, 526 U.S. at 645). Plaintiffs rely on *Doe v. Brighton School District 27J*, applying the Tenth Circuit's reasoning, for a finding that allegations of intimidating behavior by plaintiff's assailant and his friends after plaintiff was sexually assaulted were sufficient to support a claim. 19-CV-0950-WJM-NRN, 2020 U.S. Dist. LEXIS 30848, *21

(D. Colo. Feb. 24, 2020). There, plaintiff reported the post-assault harassment and bullying to the school. *Id.* at *6-8. The school delayed at least one week in taking any action and further harassing behavior occurred in that time. *Id.* at 20. The Court decided that plaintiff had a reasonable fear of encountering the perpetrator and that the school's deliberate indifference made her vulnerable to further harassment. *Id.* at 21.

The Court finds the reasoning of the Sixth Circuit persuasive.[12] Applying the law of *Davis* as understood by the Sixth Circuit, plaintiffs' amended complaint fails to plead actionable further sexual harassment. Doe-2 has not alleged that any further severe, pervasive, or objectively offensive conduct occurred after she made a report to the school. Her pleading states only that her assailant was present near her on campus. Moreover, unlike *Kollaritsch* and *Brighton*, Doe-2 does not allege that she reported any ongoing offensive conduct to defendant after the no-contact order was issued. Thus, defendant had no opportunity to take additional action. *See Doe v. Univ. of Ky.*, 959 F.3d 246, 251 (6th Cir. 2020) (opining that the relevant inquiry is whether the school's *response* to plaintiff's accusations of rape subjected her to *further* sexual harassment) (emphasis in original); *see also Vance v. Spencer County Pub. Sch. Dist.*, 231 F.3d 253, 261 (6th Cir. 2000) (explaining that where a school has knowledge that its remedial action is inadequate and ineffective, it is required to take reasonable action in light of those circumstances to eliminate the behavior).

Additionally, even if the alleged post-notice interactions could amount to actionable harassment of a severe, pervasive, and objectively offensive nature, Doe-2 has failed to

---

[12] The Second Circuit has not yet addressed this issue.

show that Niagara's initial response was clearly unreasonable and caused further harassment. *See Univ. of Ky.*, 959 F.3d at 252. Doe-2 argues that Niagara's response was deliberately indifferent because no hearing or investigation was conducted in response to her report and her alleged assailant was never suspended. Although Niagara could have taken more severe action against the alleged assailant, it does not follow that the university was deliberately indifferent. *See Escue v. N. Okla. College*, 450 F.3d 1146, 1155 (10th Cir. 2006). Upon learning of the incident, plaintiff acknowledges that defendant promptly issued a mutual no-contact order to prevent further misconduct and interaction between the parties. Doe-2 does not allege that she sought other protections or accommodations which Niagara failed to provide. Niagara's response to the reported sexual assault was, at least arguably, a timely and reasonable measure to end the harassment and not "clearly unreasonable" in light of the known circumstances. *Id*. To the extent Doe-2 is alleging that Niagara was deliberately indifferent by failing to follow its own policies relative to sexual harassment or by inadequately informing Doe-2 of her Title IX rights, such allegations do not support a cognizable claim. *See Roskin-Frazee*, 2018 U.S. Dist. LEXIS 28937 at *23 ("[F]ailure to inform Plaintiff of her Title IX rights, constitutes, at most, negligence, which falls short of Title IX's clearly unreasonable standard."); *Facchetti v. Bridgewater Coll.*, 175 F. Supp. 3d 627, 638 (W.D. Va. 2016) ("[T]here is ample authority holding that neither a school's negligence in addressing a sexual assault, nor its failure to provide the remedy wanted by the victim, constitutes deliberate indifference under Title IX.") (collecting cases); *Moore v. Regents of the Univ. of Cal.*, 15-CV-05779-RS, 2016 U.S. Dist. LEXIS 167737, *6 (N.D. Cal. Dec. 5, 2016) ("[A] school's violation of its own policy does not alone establish deliberate indifference for

purposes of Title IX). Therefore, defendant cannot be said to have been deliberately indifferent to sexual harassment after it became aware of Doe-2's assault.

Even viewing all the facts in favor of plaintiffs, the amended complaint fails to state a claim of post-assault deliberate indifference. Thus, this portion of the claim should be dismissed.

In sum, the Court recommends defendant's motion to dismiss be denied with respect to Doe-2's pre-assault claim of deliberate indifference and granted with respect to Doe-2's post-assault claim of deliberate indifference.

### III.    Rolf's Breach of Contract Claim

Defendant moves to dismiss plaintiff Rolf's breach of contract claim under Rule 12(b)(6) on the basis that it fails to state a plausible claim for relief under New York law. (Dkt. No. 14-3, pgs. 17-18). Plaintiff Rolf alleges that Niagara breached express or implied agreements to provide her with an athletic scholarship to attend Niagara University. (Dkt. No. 19, pgs. 18-20). Rolf argues that defendant's deliberate indifference to sexual harassment by members of the men's swim program created a hostile environment which in turn made Rolf's performance of the contract impossible. (*Id.*)

"To survive a motion to dismiss for a breach of contract claim under New York law, the complaint must allege facts which show: (1) the existence of an agreement; (2) adequate performance of the contract by the plaintiff; (3) breach of the contract by the defendant; and (4) damages." *Prasad v. Cornell Univ.*, 5:15-CV-322, 2016 U.S. Dist. LEXIS 161297, *62-63 (N.D.N.Y. Feb. 24, 2016). A student may sue his or her college or university for breach of an implied contract in certain situations, but in order to state a valid claim, a plaintiff must identify when and how the defendant breached the specific

contractual promise. *See id.*; *see also Gally v. Columbia Univ.*, 22 F. Supp. 2d 199, 206 (S.D.N.Y. 1998). Implicit in a student contract with a university is the requirement that the institution act in good faith in its dealings with its students. *See Olsson v. Bd. of Higher Educ.*, 49 N.Y.2d 408, 413-14 (1980).

Here, plaintiff Rolf submits that "a reasonable person would have understood that the university, as a member of MAAC and NCAA [collegiate athletic conferences], would provide an opportunity for Ms. Rolf to participate in a swim program that abided by applicable rules, regulations, and statutes," and that she would not be subjected to discrimination and harassment based on her gender. Plaintiff further asserts that Niagara breached its obligations under the university's Student Athlete Code of Conduct, Student Handbook, and other sexual harassment policies.

Courts have held that a university's general policy statements, rules, guidelines, and broad statements about fair and equal treatment cannot support a breach of contract claim. *See Ward v. New York Univ.*, 99-CV-8733, 2000 U.S. Dist. LEXIS 14067, *10-12 (S.D.N.Y. Sept. 23, 2000) ("[B]road pronouncements of the University's compliance with existing anti-discrimination laws, promising equitable treatment of all students" are not a basis for a breach of contract claim); *see also Gally,* 22 F. Supp. 2d at 206-07 (holding that a student's mere allegation of abusive and discriminatory mistreatment by a professor without the identification of a specific breached promise or obligation does not state a claim). Courts will only enforce terms, such as those found in a student handbook, that are "specific and concrete." *See Knelman v. Middlebury Coll.*, 898 F. Supp. 2d 697, 709 (D. Vt. 2012). In *Knelman,* a plaintiff who was dismissed from the hockey team for disciplinary reasons argued that his college was contractually obligated to abide by the

student handbook and the NCAA manual which set out disciplinary procedures and "fairness provisions." *Id.* at 708-16. There, the Court ruled that neither of the provisions made "specific and concrete" promises upon which plaintiff could bring a viable cause of action. *Id.* Here, plaintiffs have also failed to assert any specific contractual promise or obligation which defendant has breached. They rely only on generalized claims that defendant did not provide a safe environment. Such allegations are insufficient.

Plaintiff also argues that defendant breached the implied covenant of good faith and fair dealing. However, there is "ample New York precedent [that] a student cannot maintain a breach of contract claim against a university based *solely* on the implied covenant of good faith." *Evans v. Columbia Univ.*, 14-CV-2658, 2015 U.S. Dist. LEXIS 48768, *11-12 (S.D.N.Y. Apr. 13, 2015) (emphasis added). On this point, plaintiff attempts to rely on *Milo v. University of Vermont*, 2:12-CV-124, 2013 U.S. Dist. LEXIS 123682 (D. Vt. Aug. 29, 2013). There, a student athlete alleged that the school breached the covenant of good faith and fair dealing by dismissing him from the hockey team and not renewing his athletic scholarship. *Id.* at 23-25. The Court explained that each party owed each other the duty of good faith in their contractual relationship, and conduct that violates "community standards of decency, fairness, or reasonableness" demonstrates a lack of good faith. *Id.* (citations omitted). Nonetheless, that Court found no specific conduct to support a ruling that the university undermined plaintiff's rights under the contract.

Further, plaintiff fails to cite any New York caselaw holding that a student has an implied or express contractual right to a harassment-free environment, particularly in the

context of a scholarship decision.[13] The most analogous case submitted by either party is *Ruegsegger v. Bd. of Regents of W.N.M. Univ.*, 141 N.M. 306 (N.M. Ct. App. 2006). In that case, plaintiff was raped by two football players and argued that the university breached an athletic scholarship agreement by failing to following its own policies and procedures, failing to provide a school free from harassment and hostility, and failing to provide reasonable support to her following the assault. *Id.* at 308. Applying New Mexico law, the Court ruled that plaintiff had not stated a cognizable claim for breach of contract because plaintiff had not alleged that defendant breached any contractual duty under the scholarship agreement. *Id.* at 311.

Thus, the Court concludes that plaintiff Rolf has not stated a cognizable claim for relief based on breach of contract. Accordingly, this Court recommends that plaintiff's fifth cause of action be dismissed in its entirety.

## IV.    Leave to Amend

In their responsive papers, plaintiffs seek leave of the Court to amend their complaint to correct any deficiencies. (Dkt. 22, pgs. 26-27). Pursuant to Fed.R.Civ.P. 15(a), a court should "freely" give leave to amend "when justice so requires." However, leave to amend may be denied for good reason, including futility, bad faith, undue delay, or undue prejudice to the opposing party. *Kim v. Kimm*, 884 F.3d 98, 105 (2d Cir. 2018).

---

[13] Only one case cited by plaintiffs addressed a breach of contract claim stemming from a school's implied promise of fairness and the covenant of good faith and fair dealing. *See Z.J. v. Vanderbilt Univ.*, 355 F. Supp. 3d 646, 699 (M.D. Tenn. 2018). Applying Tennessee law, that Court dismissed plaintiff's claim, concluding that because plaintiff had not adequately plead that Vanderbilt failed to perform the specific terms of its sexual misconduct policy, he had also not adequately plead a breach of good faith and fair dealing. *Id.* This Court does not find instructive the additional cases referred to by plaintiff for the proposition that this contract claim should be viewed as a "hostile environment" claim under Title VII standards. *See Doe v. Columbia Univ.*, 831 F.3d 46, 48 (2d Cir. 2016); *Papelino v. Albany Coll. of Pharmacy of Union Univ.*, 633 F.3d 81, 89 (2d Cir. 2011); *Murray v. N.Y. Univ. Coll. Of Dentistry*, 57 F.3d 243, 248-49 (2d Cir. 1995).

Following oral argument, plaintiffs presented a supplemental memorandum of law indicating that there has been further investigation and additional facts obtained relative to Doe-2's Title IX claims. This Court recommends that plaintiffs be given an opportunity to amend their complaint in regard to the post-assault allegations. Further, if the District Court were to disagree with this Court's recommendations on the sufficiency of the pre-assault claim, it is recommended that leave to amend be granted there too.

The Court recommends that leave to amend plaintiff Rolf's breach of contract claim be denied as it appears as a matter of law that an amendment to said claim would be futile.

## **CONCLUSION**

For the foregoing reasons, it is recommended that defendant's motion to dismiss certain claims (Dkt. No. 14) be granted in part and denied in part. Specifically, the following claims should be dismissed: (1) plaintiff Jane Doe-2's Title IX claim for post-assault deliberate indifference; (2) plaintiffs' claim for negligent administration of a Title IX program; (3) plaintiffs' claim for common law negligence; and (4) plaintiffs' claims for breach of contract.

Pursuant to 28 U.S.C. §636(b)(1), it is hereby ORDERED that this Report and Recommendation be filed with the Clerk of Court.

Unless otherwise ordered by Judge Vilardo, any objections to this Report and Recommendation must be filed with the Clerk of Court within fourteen days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a), and 6(d) of the Federal Rules of Civil Procedure, and Local Rule of Civil Procedure 72. Any requests for an extension of this deadline must be made to Judge Vilardo.

*Failure to file objections, or to request an extension of time to file objections, within fourteen days of service of this Report and Recommendation WAIVES THE RIGHT TO APPEAL THE DISTRICT COURT'S ORDER.* See Small v. Sec'y of Health & Human Servs., 892 F.2d 15 (2d Cir. 1989).

The District Court will ordinarily refuse to consider *de novo* arguments, case law and/or evidentiary material which could have been, but were not, presented to the Magistrate Judge in the first instance. *See Paterson-Leitch Co. v. Mass. Mun. Wholesale Elec. Co.*, 840 F.2d 985, 990-91 (1st Cir. 1988).

Pursuant to Local Rule of Civil Procedure 72(b), written objections "shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority." *Failure to comply with these provisions may result in the District Court's refusal to consider the objection.*

SO ORDERED.

Dated:      October _20_, 2020
            Buffalo, New York

                                        _____
                                        MICHAEL J. ROEMER
                                        United States Magistrate Judge